UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MOUNT VERNON FIRE INSURANCE COMPANY, a Pennsylvania corporation,<br><br>                  Plaintiff,<br><br>   v.<br><br>THE 211 BAR AND GRILL, INC. a Washington corporation, and DARIN TALOTTI, an individual,<br><br>                  Defendants. | NO: CV-10-450-RMP<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

    This matter comes before the Court on Defendants' motion for summary judgment, ECF No. 30. The Court reviewed the parties' filings related to the motion and heard oral argument on September 16, 2011.

    Plaintiff Mount Vernon Ins. Co. ("Mount Vernon") brought this suit seeking rescission of a liquor liability policy and a declaratory judgment finding that Plaintiff has no obligation to defend or indemnify Defendants against the allegations in the underlying lawsuit, a wrongful death suit based on a dram shop

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 1

liability claim. Defendants move for a summary judgment determination that liquor liability coverage exists for The 211 Bar and Grill Inc. ("The 211") as a matter of law.

BACKGROUND

The following facts are undisputed, unless otherwise noted. Tony Talotti, brother of Defendant Darin Talotti, owned a bar incorporated as Talotti's Inc. ("Talotti's") and operating under the business name, "Talotti's 211" at 211 N. Division in Spokane, Washington. Darin[1] worked as manager of Talotti's. Tony worked with retail insurance broker Aaron Meldrum to purchase liquor liability insurance coverage for Talotti's.

Talotti's incurred several violations, issued by the Washington State Liquor Control Board, and received complaints relating to over-served patrons leaving the premises. ECF Nos. 50-3.

In June 2009, Darin incorporated The 211 and conducted business at the same location where Talotti's had previously operated. After formation of The 211, the City of Spokane asked Darin to enter a "Good Neighbor Agreement" as a condition to a city-issued entertainment license. Under that Agreement, Darin

---

[1] The Court refers to Darin Talotti and Tony Talotti by their first names for the sake of clarity.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 2

acknowledged and agreed to assume the prior license violation history associated "with this establishment previously known as [Talotti's]" ECF No. 34 at 2.

As Tony had previously done for Talotti's, Darin worked with Mr. Meldrum to secure liquor liability insurance coverage for The 211. Specifically, Mr. Meldrum was involved as a retail broker, and Anchor Bay Insurance Managers Inc. ("Anchor Bay") served as the surplus lines broker for insurer Mount Vernon.

The two relevant insurance applications completed by Mr. Meldrum and signed by Darin for The 211 are: (1) a restaurant/bar/tavern application from Anchor, which asked whether the "insured" or "any employees" had any liquor citations/violations in the past three years; and (2) a United States Liability Insurance Group Liquor Liability Warranty Application ("USLIG Application"), which asked about any "knowledge" of prior fines or citations and about any fines/violations "at this location" in the past five years.

The subsequent insurance Quote required the potential insured to note the following warranted condition: "The insured has no knowledge of more than 2 fines or citations for violation of law or ordinance related to illegal activities or the sale of alcohol at this location within five years prior to the date the application is signed." ECF No. 32-1 at 24. The Policy that Mount Vernon issued included similar warranty language to the insurance quote, stating that "the insured has no knowledge of more than 2 fines or citations for violation of law or ordinance

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 3

related to illegal activities or the sale of alcohol at this location within five years prior to the date the application is signed." ECF No. 51-5 at 54.

During discovery, Anchor Bay produced, as part of the brokerage's file on The 211, a document that appears to have been prepared by "S Baldauf"[2] and is dated October 2, 2009.  ECF No. 56 at 4. The parties dispute the meaning of the document.  Defendants contend that the Court may infer from the document that Anchor Bay knew of Talotti's history of violations before the insurance policy was issued on October 13, 2009.  Plaintiff responds that the document is ambiguous and does not dictate any conclusion regarding Mount Vernon's knowledge of Talotti's violation history before October 13, 2009.

On November 20, 2009, Cameron Olsness spent an evening drinking at The 211.  Mr. Olsness was intoxicated when he left The 211, drove a vehicle, and struck a tourist from Canada, Elaine Price-Cornell, in a downtown Spokane crosswalk.  Ten days later, Ms. Price-Cornell died of the injuries that she sustained in the collision.  Eventually, Mr. Olsness pleaded guilty to involuntary manslaughter.

---

[2] The parties agree that Anchor Bay employs an individual named Stephanie Baldauf.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 4

Ms. Price-Cornell's survivors filed a wrongful death lawsuit against The 211 in Spokane County Superior Court in January 2010.  The suit claimed that Mr. Olsness struck and killed Ms. Price-Cornell after consuming an excessive amount of alcohol at The 211 and that The 211 continued to serve Mr. Olsness despite apparent intoxication.

On April 7, 2010, Mount Vernon sent a reservation of rights letter to Darin and The 211.  The letter stated that although Mount Vernon would retain defense counsel for The 211 in the ongoing wrongful death action, Mount Vernon reserved its right to deny coverage in the event that further investigation revealed that nondisclosure of a violation history at the bar's location precluded coverage either in whole or in part.

In December 2010, Mount Vernon filed the instant declaratory judgment action with this Court.  ECF No. 1.  The only deposition taken in the declaratory judgment action to date has been of Mr. Meldrum.

## APPLICABLE LAW

The Court exercises diversity jurisdiction over this case, 28 U.S.C. §1332(a), and, therefore, applies state substantive law and federal procedural law.  *Feldman v. Allstate, Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)).

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 5

*Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . . " *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors*

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 6

*Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party.  If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631.  The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). Furthermore, the court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

***Washington Law Governing Rescission of an Insurance Policy***

Mount Vernon seeks rescission based on misrepresentation.  ECF No. 1. Washington state law limits when an insurance company may rescind a contract. RCW 48.18.090(1) provides:

> [N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract . . .  shall be deemed material or defeat or avoid the contract[,] . . . unless the misrepresentation or warranty is made with the intent to deceive.

Construing this statutory provision, the Washington State Supreme Court has stated, "'we have repeatedly held that, in order to avoid or defeat the policy, there must be proof of intent to deceive.' We are cognizant of the rule that false representations, or warranties known to be false, give rise to a presumption of an

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 7

intent to deceive, which is not overcome by the unsupported denial of the insured." *American Fidelity & Cas. Co. v. Backstrom*, 47 Wn.2d 77, 84 (Wash. 1955) (citations omitted) (quoting *Miller v. United Pac. Cas. Ins. Co.*, 187 Wn. 629, 639 (Wash. 1936)).

Therefore, an insurance company may rescind a policy only if: (1) the insured represented certain information as truthful to the insurance company during the negotiation of the insurance contract; (2) the representations were untruthful, i.e., they were misrepresentations; (3) the misrepresentations were material, and (4) they were made with the intent to deceive the insurer. *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F.Supp.2d 988 (W.D.Wash. 2004). Reliance on the misrepresentation is also a required element for common law rescission. *See Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 384–385 (Wash. 1987) (common law rescission of contract based on misrepresentation requires a showing of three elements: (1) the misrepresentation was material; (2) they relied upon the misrepresentation; and (3) their reliance was justified).

"When a false statement has been made knowingly, there is a presumption that it was made with intent to deceive." *Cutter & Buck*, 306 F.Supp.2d at 1004 (citing *Music v. United Ins. Co. of Am.*, 59 Wn.2d 765, 769 (Wash. 1962)). The "presumption is not overcome by the unsupported declaration of the applicant that no such intent existed in his mind at the time." *Day v. St. Paul Fire & Marine Ins.*

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 8

*Co.*, 111 Wn. 49, 59, 189 P. 95 (1920); *see also American Fidelity & Cas. Co. v. Backstrom*, 47 Wn.2d 77, 84 (Wash. 1955) (presumption "is not overcome by the unsupported denial of the insured."). Moreover,

> [t]he insured's bare assertion that she did not intend to deceive the insurance company is not credible evidence of good faith and, in the absence of credible evidence of good faith, the presumption warrants a finding in favor of the insurance company.

*Ki Sin Kim v. Allstate Ins. Co., Inc.*, 153 Wash.App. 339, 356, 223 P.3d 1180 (2009). If, however, there is credible evidence that the alleged misrepresentations were made without intent to deceive, then that determination is a question for the jury. *Cutter & Buck*, 306 F.Supp.2d at 1004.

## ANALYSIS

Defendants forward two theories to support their summary judgment motion. First, they argue that Mr. Meldrum, as Plaintiff's agent, made the misrepresentations, not Darin or The 211. Therefore, coverage exists. Alternatively, Defendants argue that the Anchor Bay document, ECF No. 56 at 4, proves that Plaintiff's agent, Anchor Bay, investigated whether The 211 had numerous prior violations before the insurance policy was issued, and, therefore, Mount Vernon should be estopped from seeking rescission.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 9

*Agency Relationship(s)*

An agency relationship exists, either expressly or impliedly, when one party acts under the direction and control of another. *Hewson Constr., Inc. v. Reintree Corp.*, 101 Wn.2d 819, 823 (1984). It is the burden of the party asserting the agency relationship to proffer evidence of that relationship. *Deep Water Brewing, LLC v. Fairway Resources, Ltd.*, 152 Wn. App. 229, 259 (Wash.App.Div.3 2009).

In this case, the parties dispute whether Mr. Meldrum was acting as the agent of Defendants or of Plaintiff in the course of negotiating and finalizing the insurance policy on October 2009. However, the burden is on Defendants, who assert the agency relationship for purposes of the present summary judgment motion, to provide evidence of the agency relationship between Mr. Meldrum and Mount Vernon that Defendants are asserting. *See Deep Water Brewing, LLC v. Fairway Resources, Ltd.*, 152 Wn. App. at 259. Finding no such evidence in the record, the Court declines to find at this time that any agency relationship existed between Plaintiff and Mr. Meldrum.

By contrast, as stated at oral argument, the parties agree that an agency agreement is in place between Mount Vernon and Anchor Bay. Therefore, the Court treats Anchor Bay's agency relationship with Mount Vernon as an undisputed fact.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 10

*Anchor Bay's Knowledge of Prior Violations Before Issuance of the Insurance Policy*

As stated above, Defendants' argument for summary judgment is founded upon their allegation that Plaintiff itself had prior knowledge of the violation history of Talotti's. Defendants further allege that Plaintiff's knowledge of the prior violations should be imputed to Defendants either based on an agency relationship between Mr. Meldrum and Plaintiff, since it is undisputed that Mr. Meldrum knew of the prior violations, or based on the Anchor Bay document at ECF No. 56 at 4.

The Court determined above that Defendants did not submit sufficient evidence to show that Mr. Meldrum acted as Plaintiff's agent. The Anchor Bay document is a one-page document containing two tables. ECF No. 56 at 4. The first table is labeled "subWAViolationResults" and lists one violation that occurred in July 2006. *Id.* The second table is labeled "subWAWorstResults" and contains nine entries, with four of them being listed as "Violation Count[s]" in the column labeled "BAC." *Id.* There are also handwritten notations in the margins and at the bottom of the page and the typed notation "S Baldauf" and "10/2/09" in the top right-hand corner of the page. *Id.* Defendants have not presented any evidence clarifying the meaning of the "subWAWorstResults" table on the document. Even more crucially, Defendants have presented nothing to support authentication of the

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 11

document or that whoever made notations on this document was an agent of Anchor Bay who understood the document to reveal "more than 2 fines or citations for violation of law or ordinance" before October 13, 2009, the date that the insurance policy came into effect. ECF No. 51-5 at 53-54.

The Court is not persuaded that the Anchor Bay document is the smoking gun that Defendants believe it is. *See* ECF No. 55 at 3 ("The single document necessary to grant this Defendants' Motion for Summary Judgment is [ECF No. 56 at 4] . . ."). Rather, the Court finds that the meaning and significance of the unauthenticated document is unknown at this stage in the litigation. Defendants have not met their burden of producing sufficient evidence to show the genuine absence of a material question of fact. *See Celotex*, 477 U.S. at 323.

*Plaintiff's Argument for Summary Judgment*

In opposing Defendants' motion for summary judgment, Plaintiff argues that Defendants' motion should be denied, or, in the alternative, that the Court should sua sponte grant summary judgment in Plaintiff's favor. ECF No. 49 at 26. As the Court determined above, material questions of fact regarding what knowledge, if any, Plaintiff had of The 211's violation history and whether an agency relationship existed between Plaintiff and Mr. Meldrum preclude a grant of summary judgment on the claim for rescission based on misrepresentation. That conclusion applies equally to Plaintiff.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 12

In addition to the claim raised by the complaint for rescission based on misrepresentation, Plaintiff raised a new basis for relief at oral argument and in its memorandum opposing Defendants' motion for summary judgment. Specifically, Plaintiff argues that Defendants breached the insurance contract by breaching the warranty and that, pursuant to that breach, Plaintiff may exclude coverage to Defendants under the Endorsement portion of the policy. ECF No. 49. However, Plaintiff never pleaded a breach of contract claim and has not filed a motion to amend its complaint. The Court declines to sua sponte grant summary judgment for Plaintiff on the basis of its breach of contract argument.

For all the foregoing reasons, **IT IS ORDERED** that Defendants' motion for summary judgment, **ECF No. 30**, is **DENIED**.

The District Court Executive is further directed to enter this Order and furnish copies to counsel.

**DATED** this 29th day of September, 2011.

                                    *s/ Rosanna Malouf Peterson*
                                  ROSANNA MALOUF PETERSON
                              Chief United States District Court Judge

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ~ 13